Robert M. Herz
Law Offices of Robert Herz, P.C.
425 G. Street, Suite 600
Anchorage, Alaska 99501
907-277-7171 Phone
907-277-0281 Facsimile

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| United States of America, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| Keyana Marshall, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Case No. 3:09-cr-00053 (TMB)

## DEFENDANT'S SENTENCING MEMORANDUM

A period of excludable delay under 18 U.S.C. 3161(h)(1)(F) may occur as a result of the filing/granting/denying of this motion.

Defendant, Keyana Marshall, by and through counsel, Robert M. Herz, of the Law Offices of Robert Herz, P.C. hereby files this sentencing memorandum in aid of sentencing.

### UNRESOLVED OBJECTIONS TO THE PSR

**1. The USPO relies upon the wrong guidelines and thus calculates an erroneous advisory guideline range, which is denominated "USPO Version." [Page 12. ¶ 26 & Page 15, ¶ 31 & 32; pages 15-18 ¶31-49]**

Ms. Marshall objects to the inclusion of the "USPO version" of the guideline calculation in its entirety, found at paragraphs 31-49, because it is erroneous and because it contravenes the parties plea agreement. Ms. Marshall requests that it be stricken from the final PSR submitted to the court, and BOP.

Ms. Marshall pleaded to a general Conspiracy charge pursuant to 18 U.S.C. §371. The titular language given to the conspiracy charge in count one of the indictment was drafted by the government. This language is not the language found in the United States Code and is not the title of the statute drafted by Congress. It is well established that the title of a statute is not controlling over the language of the statute itself. *Penn. Dept. of Corrections v. Yeskey*, 524 U.S. 206, 212 (1998). Similarly, where there is a variance between the language of a count in the indictment and proof at trial, so long as the variance is not material and does not prejudice the defendant, the facts established at trial will control. Thus, the title given to a charge in an indictment has no legal effect. It is the underlying facts and/or overt acts which must be proven at trial, or at sentencing or are admitted by the defendant, and those facts will control and will determine of what conduct or acts a defendant is actually guilty of committing.

Moreover, the fact that Ms. Marshall pleaded to count one cannot be viewed in a vacuum. What she admitted to by pleading to count one is limited by the factual statement in the plea agreement and circumscribed by what the plea agreement provides can be considered as relevant conduct. This is especially true, when one realizes that there over 49 paragraphs that comprise count one, and twenty four of the paragraphs comprise overt acts. Notably though not all of the overt acts in count one pertain to juveniles, in fact, most pertain to adults, even though the title to the count refers to just juveniles. Ms. Marshall did not have to agree that all of the alleged overt acts pertained to her, or were correct, or that she was guilty of each overt act in order to enter a plea to this count. Nor did the government have to prove each overt act occurred or that Ms. Marshall was guilty of each overt act in order to convict her of count one. Thus, the fact that the title of the count refers to juveniles does not control and does not mean that offense of conviction is for "juvenile prostitution." This interpretation

would defeat the intent of the parties' agreement that only the conduct underlying counts 13, 16, 18, 20, 23, 25, 27, 29 and 31 should be considered in sentencing the defendant.

An analysis of the actual language of the count shows that most of the conduct alleged involved adult women despite the language or words used in the title of the count. An analysis of the count reveals that paragraph 5 - 8 sets forth general allegations about the conspiracy and the goals of the conspiracy. In paragraph 5, subparagraphs a and c mention underage girls, subparagraphs b, d, e, and f do not. Paragraph 6 is specific to Mujahid and Greene and mentions underage girls and women; paragraph 7 is specific to Mujahid and Greene; paragraph 8 mentions Marshall, but not underage girls. The next section of count one alleges the manner and means of the conspiracy. Paragraphs 9-22 and 24 & 25 do not mention Ms. Marshall, only paragraph 23 does. Alleged overt acts cover paragraphs 26-49. Paragraph 26 is only a general statement, paragraph 27 refers only to Mujahid and does not refer to any juveniles, paragraph 28 refers to Greene and does not refer to any juveniles; paragraph 29 & 30 refer to Grace Mujahid and does not refer to any juveniles; paragraph 31 refers to Greene engaging in conduct for Mujahid involving underage girls and women; paragraph 32-33 refers to Mary Butler and Greg Tsabote working for Mujahid including driving underage girls to dates and giving them alcohol and drugs. Paragraph 34 refers to Marshall posting to Craigslist including women and girls. Paragraph 35 refers to Marshall engaging in prostitution at Mujahid's direction; this does not refer juveniles. Paragraph refers only to Rand Hooks. Paragraph refers to both women and juveniles but does not allege any conduct by Marshall; paragraph 38 refers to Mujahid and Juvenile A; paragraph 39 alleges Marshall posted Juvenile B to Craigslist at Mujahid's direction; paragraph refers to Greene and Juvenile C; paragraph 41 through 48 refers to Mujahid or others acting for him posting

adult prostitutes to Craigslist (Jane Does 1, 2, 3, 4, 7, 8, 10, & 11); paragraph 49 refers to Mujahid and Greene and identity theft.

Notably, 8 of the 24 overt acts, that is one-third of the overt acts in count one refer to adult women only--- all of the same adult women referenced in counts 13, 16, 18, 20, 23, 25, 27, 29, & 31--- which comprise the relevant conduct to which Marshall admitted and government agreed would constitute the relevant conduct that could be considered by the court at sentencing.

The USPO erroneously notes that paragraph 26 of the plea agreement is not specific regarding the overt acts committed by Ms. Marshall, and is vague about her "involvement" with juveniles. This view ignores the fact that the plea agreement is specific about what relevant conduct can be considered by the court. Ms. Marshall objects to the statement in this paragraph that "counts 13, 16, 18, 20, 23, 25, 27, 29, & 31 … involving adult prostitutes… is relevant… to her involvement in the count of conviction regarding *juvenile prostitutes*.

No, it is relevant to her involvement to the adult prostitutes alleged in count one and in particular to paragraphs 41-48. If the interpretation advanced by the USPO were to stand, it would turn the intent of the plea agreement on its head. Consequently, Ms. Marshall objects to the Probation Officer's Version of the advisory guideline calculation found in paragraphs 31 to 49 in its entirety, and requests it be deleted from any version accepted by the court or transmitted to the BOP or relied upon by any USPO for purposes of supervised release.

Without waiving any particular objection to any one of the final PSR paragraphs of the USPO version (¶31-49), Ms. Marshall, in particular, objects to paragraph 32. While Ms. Marshall pleaded to a count with a title alleging Conspiracy to Commit Sex Trafficking of Children and by Force, Fraud, and Coercion, she did not admit any overt acts or any specific facts to support an allegation of trafficking of children at her change of plea. What she did

admit were facts found in the "Factual Basis" in the plea agreement, and she agreed all of the underlying conduct found in counts 13, 16, 18, 20, 23, 25, 27, 29, & 31 could be considered at sentencing. Moreover, this was the government's agreement as well. Clearly, the plea agreement contemplates a plea to a conspiracy involving adult prostitutes, and nothing in the language of 18 U.S.C. §371 contradicts this. Thus relying on U.S.S.G. §2G1.3 when the plea agreement clearly contemplates reliance on §2G1.1 (conspiracy if victims other than a minor) is not appropriate.

Similarly, she objects to paragraphs 34 and 34(a), because she did not plead guilty to an underlying offense based upon 18 U.S.C. §1591 or §1594 and thus to use §U.S.C. 1591 to calculate the offense level, when no plea was entered to such a statute and when the plea agreement specifically calls for reliance on 18 U.S.C. §1952, simply is not appropriate. Indeed, subparagraph (a) cannot be relied upon because, in fact, Ms. Marshall was not convicted pursuant to §1591(b)(1), so a calculation based on this is a fiction.

With regard to draft PSR Footnote 7, now footnote 13 in the final PSR, the USPO notes commentary to U.S.S.G. §2G1.1 indicates this guideline should apply to violations of 18 U.S.C.1591 "*<u>Sex trafficking</u> of children **or <u>by force, fraud, or coercion</u> (only if the offense involved a victim other than a minor)*." (emphasis supplied). Reliance on U.S.S.G. § 2G1.1 is appropriate since the charges in Counts 13, 16, 18, 20, 23, 25, 27, 29, and 31, represent sex trafficking of victims other than minors and fraud, force or coercion was used by Mujahid and Greene against the adult prostitutes during the course of the conspiracy. Therefore, while this guideline application is more onerous (as noted by the USPO) on the defendant than U.S.S.G. § 2E1.2, the defendant does not believe that use of §2E1.2 is applicable under the circumstances.[1] Thus, the application of U.S.S.G. § 2G1.1 is the appropriate guideline that the

---

[1] § 2E1.2 was identified by USPO as being applicable to Counts 13, 16, 18, 20, 23, 25, 27, 29, and 31, and for

court should rely upon in calculating an advisory guideline sentence.

**2. The UPSO erroneously determines that the victims qualify as "vulnerable" victims. [Page 20 ¶54-55].**

The determination by the USPO that the victims in this case qualify as "vulnerable" victims contravenes established federal precedent and is erroneous. A vulnerable victim is defined as one who is *unusually* vulnerable due to age, physical, or mental condition *or* who is otherwise *particularly* susceptible to the criminal conduct. The USPO has not given appropriate emphasis to the italicized language. This adjustment is not applicable unless the vulnerability or susceptibility of the victim is *greater* than that of a *typical* victim. As the Ninth Circuit observed, "[I]t is not enough to support a finding of particular susceptibility … that the victims are more likely than other members of the general population to become a victim to the particular crime at issue. The reason for this is that criminals will always tend to target their victims with an eye toward success in their criminal endeavor." *U.S. v. Castellanos*, 81 F.3d 108, 110-11 (9th Cir. 1996); see also, *U.S. v. Morrill*, 984 F.2d 1136, 1138 (11th cir. 1993). Thus, the court must begin the analysis by examining the class of victims, in this case either adult prostitutes or teenage prostitutes, not the general population. The court then must ask with regard to each individual victim, if that individual was somehow more vulnerable or susceptible than the average victim in the comparable class.

As the Ninth Circuit noted "we reject the argument that a person of advanced age or extreme youth is by that fact alone 'unusually vulnerable' without regard to his or her individual characteristics." *U.S. v. Luca*, 183 F.3d 1018, 1025 (9th Cir.); see also , *U.S. v. Lee*, 973 F. 2d 832, 834 (10th Cir.1992)(without more, class membership alone cannot support an

---

violations of 18 U.S.C. § 1952, *Interstate or Foreign Travel or Transportation in Aid of a Racketeering Enterprise*. The §2E1.2 guideline carries a base offense level of 6, plus an eight-level increase under U.S.S.G. § 3D1.4, for a base offense level under U.S.S.G. § 2X1.1 of 14.

enhancement); *U.S. v. Smith*, 930 F.2d 1450, 1455 (10th Cir. 1991)(the label "elderly" or "young" is too vague, standing alone to provide a basis for an enhancement). [2]

Targeting young, white, inexperienced, and naïve store clerks in a scheme to pass forged money orders was determined to be insufficient to uphold an enhancement. *U.S. v. Paige*, 923 F.2d 112 (8th Cir. 1991). Even closer to the facts of this case, the Ninth Circuit held that the enhancement did not apply to a defendant convicted of violating the provision of the Mann Act pertaining to adult prostitution based on the economic vulnerability of the victims; noting that the victims were not more vulnerable than the typical victim that the statute was designed to protect. *U.S. v. Castenada*, 239 F.3d 978 (9th Cir. 2001). In another Mann Act case involving a juvenile prostitution victim, the Ninth Circuit has also rejected application of the enhancement involving a victim whose only status was that of a drug addicted teenage runaway, a circumstance the Ninth Circuit found to be typical among Mann Act victims. *U. S. v. Williams*, 291 F.3d 1180, 1196 (9th Cir. 2002), overturned on other grounds, *U.S. v. Gonzales*, 506 F.3d 940 (9th cir. 2007).

Thus, the mere status of the victims in this case, being young women; homeless, with children; no money; and having substance abuse issues would not, standing alone, is not sufficient to permit use of the enhancement in this case. This constellation of circumstances is typical of the victims of the kind of prostitution case now before the court, and these circumstances have been considered and rejected by the Ninth Circuit as providing a basis for this enhancement. Yet, in applying this enhancement, the USPO does not rely upon any other factors. This is error, and it should not be repeated by the court.

---

[2] Ms. Marshall notes that the Second Circuit has held that whether the victim was unusually vulnerable or particularly susceptible is not satisfied by a finding that the victim was more vulnerable than fifty percent of the potential victims, rather the correct test "calls for an examination of the individual victim's ability to avoid the crime rather than their vulnerability relative to other potential victims of the same crime." *U.S. v. McCall,* 174 F.3d. 47, 51 (2d Cir. 1998). This test has not been adopted by the Ninth Circuit at this time.

The analysis does not change even as the court considers the allegation that Marshall posted a seventeen year old to Craigslist.[3] As noted above, the mere age of this victim standing alone is not sufficient to allow application of the enhancement. No other facts are alleged regarding this victim that would support application of the enhancement as to this victim. Similarly, the mere fact that the fifteen year old was native and had a drug and alcohol problem would not be sufficient.[4] As the Ninth Circuit has found a drug addicted runaway teen prostitute is typical in cases such as this. *U. S. v. Williams*, 291 F.3d 1180, 1196 (9th Cir. 2002), <u>overturned on other grounds</u>, *U.S. v. Gonzales*, 506 F.3d 940 (9th cir. 2007).[5]

The USPO and the government have not analyzed the particular facts, applicable to each alleged victim to demonstrate the existence of a unique set of characteristics to justify this enhancement. No known facts exist to suggest that any victim had any physical or mental condition that made them unusually vulnerable. Merely being young, or even under the age of 18 standing alone is not enough. And as already noted in *U. S. v. Williams*, 291 F.3d 1180, 1196 (9th Cir. 2002) being an addicted runaway teenager is not enough either. The two point enhancement should be *deleted or vacated* from the advisory guideline calculation in this case.

### 3. Application of the role enhancement "use of a minor" found at U.S.S.G. §3B1.4 in this case is erroneous. [Page 21, ¶59].

When applying this role enhancement the court cannot hold Ms. Marshall vicariously liable for the conduct her co-defendants. Proper application of the role enhancement "use of a

---

[3] Ms. Marshall makes this argument without waiving objections that relying on this fact violates the agreement about applicable relevant conduct, and the facts upon which the court can rely for sentencing,
[4] As to this issue Ms. Marshall does not waive application of §1B1.8 (a), or the provisions of the plea agreement concerning applicable relevant conduct,
[5] In addition, as to this victim, there are additional issues that preclude reliance on this incident: although it is not known when Marshall learned about this event, it is clear she only learns of it after the fact, a circumstance that precludes reliance on this enhancement, and it should be noted that it is unknown when the event itself took place, which raises the possibility it could have pre-dated Ms. Marshall's involvement in the conspiracy.

minor" is limited to only the conduct and actions of the defendant, Ms. Marshall. Initially, a simple comparison of the guideline language of §3C1.1 and 3C1.2, to the language found in guideline §3B1.4, quickly reveals that the text is the same. For those guidelines (§3C1.1 and 3C1.2), their application is limited to the defendant's own conduct. There is no rational basis for why a different interpretation should be applied to §3B1.4. See also, *U.S. v. Pojilenko*, 416 F.3d 243, 247-49 (3d. Cir. 2005)(enhancement based on §3B1.4 must be based on the defendant's own actions and cannot be applied on the basis of attribution of use of a minor by a co-conspirator).

So in this case, at most, the only conduct that could provide a basis for this enhancement is Marshall posting Juvenile B to Craigslist. First, reliance on this fact violates the parties' agreement about what relevant conduct the court can consider. But that aside, Application Note 1 to §3B1.4 states that "used or attempted to use" is defined as "directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting. The Ninth Circuit has held that the enhancement does not apply absent some evidence that the defendant acted affirmatively to involve the minor in the offense beyond merely acting as a partner. *U.S. v. Parker*, 241 F.3d 114, 1121 (9th Cir. 2001); see also, *U.S. v. Suitor*, 253 F.3d 1206, 1210 (10th Cir. 2001)(defendant must direct, train, or in some way affirmatively engage the minor participant in the crime; the evidence must demonstrate more than the defendant was engaged in a conspiracy with the minor.

Thus a "fence" purchasing a stolen gun from a minor does not constitute "use of a minor." *U.S. v. Hodges*, 315 F.3d 794, 802 n.2 (7th Cir. 2003). Similarly, a drug dealing defendant who shared using meth with a minor and borrowed the minor's scales to weigh his product for later sales; this conduct did not qualify as 'using" the minor in connection with his drug trafficking crime. *U.S. v. Humphrey*, 208 F.3d 1190, 1213 (10th Cir. 2000).

9 | P a g e

Case 3:09-cr-00053-TMB   Document 793   Filed 10/17/11   Page 9 of 20

Here, all the government can claim is that Marshall "posted" a juvenile to the internet. This is a relatively passive act. It does not involve actual prostitution, and there is no evidence the minor was even aware that she had been posted. Moreover, the mere act of Marshall posting Juvenile B to the internet, without more, did not involve directing Juvenile B, or commanding, encouraging, or intimidating, or counseling Juvenile B. It did not involve procuring or recruiting or soliciting her; Mujahid had already done those things and Juvenile B was already part of his "stable of girls" at the time Marshall posted her to the Internet. This enhancement does not apply under the facts of this case. Two points should be *deducted* from the total offense level calculated in this case.

**4. Other unresolved objections**

Second page, under heading: Identifying Data: Aliases. Ms. Marshall has never used the aliases "Koko *Marshall* or "Kim *Marshall*" or Kimbralee *Marshall*." She has used the name "Koko" or "Kim" or "Kimbralee" but never with any last name. She posted on the internet using these first names. She has never signed a legal document or applied for credit using these first names and she has never used these first names together with the last name of Marshall. She has never used the name "Kayana" or "Kayana Marshall."

Page 7, ¶19. Ms. Marshall was "turned out" by Aleaca Tate at age 15 and began working as a prostitute for Tate at that age, not age 17.

Page 7, ¶20. The chronology and facts in this paragraph are somewhat muddled and the first seven lines of this paragraph should be deleted or changed up to the sentence beginning "afterwards." The first seven lines should read as follows: "Starting at age 18, while still working for Preference Escorts in Anchorage, Marshall first met and began working for Mujahid, a neighbor of Sidney Greene. Aleaca Tate the owner of Preference Escorts would "from time to time" "loan" Ms. Marshall to Mujahid. During this time in

Anchorage, Marshall observed that Mujahid "worked" several girls without incident. Then at age 19, when Ms. Marshall had been in Fairbanks for some time, Mujahid contacted her through Ms. Marshall's independent advertisements on Craigslist's erotic section when Ms. Marshall was working for herself. Ms. Marshall agreed to "work" for Mujahid and did so for approximately two and half weeks. During this period of time, Ms. Marshall witnessed several instances of physical abuse by Mujahid against Grace Mujahid who also was a prostitute working for Mujahid."

Page 7, ¶20. Following the last sentence in this paragraph, this new sentence should be added: "It was after she began working for Mujahid in 2009 that Ms. Marshall witnessed multiples incidents of physical abuse and rape by Mujahid against the prostitutes that worked for him and that she herself was repeatedly victimized with physical abuse and rape by Mujahid."

Page 7, ¶21. Insert on third line, after the word "Marshall" and before "and Greene", add the names "Mary Butler, Greg Tsabote"

Page 7, ¶21, lines 7-9 Ms. Marshall denies that she "directed the activities" of anyone, including Juvenile A, Juvenile B as well as Jane Does 1, 3, 4, 5, 7, 8, 9, 10, and 11.

Page 7, ¶21, Line 12, delete the word "reportedly" which seems to suggest it did not happen. There is no question and no one denies (except Mujahid) that Mujahid beat and raped Marshall on multiple occasions.

Page 19, footnote 13. Each victim would represent a count, and each count is worth one unit as provided in §3D1.4(a). Thus, there are eight units. But §3D1.4 provides that where there are more than 5 units the increase is only 5 levels. The eight level increase is error. This error is seen in the last two lines of footnote 13. This error was corrected in paragraph 51(c) but not in this footnote.

Page 21, ¶58.  Object to the phrase "recruiting and training prostitutes" Ms. Marshall has only admitted to recruiting one prostitute.  And she has "trained" no one. See ¶23 (f).

Page 21, ¶61. Page 22, ¶ 67.   With the vulnerable victim and role enhancement points deleted from the calculation the Adjusted offense level should be 23, and the Total offense level should be 20.

Page 32, ¶111.  Ms. Marshall asserts that she has completed and obtained a GED.  This error was corrected in a number of places, e.g. in paragraph 105 but it was not corrected here.

Page 33, ¶113 and 114.  The guideline calculations, total offense levels and the sentencing ranges recited are erroneous.

Page 34-35 ¶130-131& 133.  Ms. Marshall objects to these arguments or suggestions by the USPO for the reasons articulated below.

## SENTENCING ISSUES

**Factors that warrant Departure under the Guidelines and §3553(a) Statutory Factors the Court should take into consideration.**

This plea agreement does properly reflect the seriousness of the offense based on the conduct Ms. Marshall engaged in.  No upward departures are appropriate.  If anything, several downward departures should be considered, or the facts set forth in supporting them should be taken into consideration as statutory sentencing factors pursuant to 18 U.S.C. §3553(a).

**A sentence of 22 months is equitable and tends not to create unwarranted sentence disparity.**

Title 18 U.S.C. §3553(a) mandates that courts consider "the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct."  Ms. Marshall would note that the government will recommending a sentence of probation for Mr. Hooks.  Mr. Hooks played an essential role in

this offense. His apartment complex served as the place of operations for Mujahid and Greene. Hook's assistance of providing additional security and consent that the illegal operations could continue made it possible for Mujahid and Greene to perpetrate their crimes. Hook's role can be seen to be more essential than Marshall's. The conspiracy existed before Marshall became involved and persisted after she left. If Hooks is to receive a sentence of probation, the court must consider the disparity between such a sentence, and the one proposed here. There is no justifiable reason for the court to impose more than 22 months, and any additional time creates unwarranted disparity between Hooks and Marshall's sentence.

Moreover, the court should take into account other equities of the circumstances of this case, as it is allowed to do under §3553(a). For instance, the court should consider the undisputed facts that Mary Butler and Greg Tsabote referenced in ¶32 & 33 of count one engaged in the same conduct as and more and additional conduct than Ms. Marshall, yet they have not been charged at all. Moreover, the court should consider that two victims (including one juvenile) were prepared to take over the duties Mujahid forced Ms. Marshall to assume while he was in jail. See ¶22 (x). They are not going to jail for any period of time either. These inequities cry out for the court to temper its sentence authority with some leniency and impose a 22 month sentence in this case.

**Ms. Marshall was a victim, not just a defendant and played a minor role in the conspiracy.**

Next, Ms. Marshall would have the court consider her undisputed status as a victim in this case, not just her status as a defendant. Ms. Marshall invites the court's attention to the government's Notice of Experts at Doc.No. 199. The government indicated that its own expert, Dr. Cooper, would testify as follows:

> The Government anticipates that Dr. Cooper will testify about relationship between pimps and prostitute, including (1) the manner by which pimps target and recruit adolescent female and adult women for prostitution; (2) how pediatric development, family dysfunction, and the use of drugs and alcohol may make adolescent female and adult women more susceptible to the influence of pimps and persons benefitting from their commercial sexual exploitation; and (3) how pimps use force and coercion to maintain control over adolescent female and adult prostitutes, ***including methods of psychological and violent manipulation pimps use to control prostitutes actions and prevent them from leaving the relationship***.

(emphasis supplied).

Ms. Marshall was as much a victim of Mujahid as any of the named Jane Does. For the vast majority of the time the conspiracy existed, Marshall was not part of the conspiracy. Marshall simply was another prostitute that worked for Mujahid. He beat her and raped her repeatedly. He kept her hooked on crack. These facts will not be disputed by the government. She "came and went" just like all the girls. But he would find her. And his threats, influence, and his coercion extended from prison as well. See, for example, ¶22 (d), (s), & (u).

Ms. Marshall's status did not change until Mujahid was jailed in October 2008. Her "undoing" was that she was more computer literate than the other girls. Mujahid took advantage of this. According to the Indictment it was in October 2008 that Ms. Marshall's role changed and she became part of the conspiracy, however, her role in this capacity lasted only several months, through about December, 2008. Indeed, if Dr. Cooper is to be believed, then Ms. Marshall could no more easily walk away than any of the other girls could. Her involvement in the business end of Mujahid's prostitution ring was for a short period of time, and her role was limited. This court should consider that a downward adjustment for role for being "minor participant." U.S.S.G. §3B1.2(b).

The following factors, in addition to others noted elsewhere, support a finding that Ms. Marshall is entitled to a downward adjustment for a minor role. Ms. Marshall's conduct was more akin to "aiding and abetting," not acting as a principal. She did not use or possess a weapon during the offense, or commit or threaten to commit violence against any victim. Ms. Marshall had no decision making authority. She did not instigate or solicit the commission of the offenses. Her roles, and tasks were assigned to her and involved a relatively unskilled tasks, such as paying bills, getting cars repaired, and posting on Craigslist. The length of time she was involved in the conspiracy was quite short. Her role when compared to that of Mujahid or Greene is minor. The conspiracy existed before she became involved and it functioned just fine and continue to do so after she left.

The application notes admonish the court that a downward adjustment for a minimal participant should be used infrequently, however, no such admonishment is made with regard to a downward adjustment for a minor participant. *Cf.* USSG §3B1.2 application note 4 with application note 5. In making a determination about the applicability of a downward adjustment for minor participant, the relevant comparison is to the conduct of the co-participants in the case at hand rather than a hypothetical "average participant" in the type of case involved. United States v. Benitez, 34 F.3d 1489, 1497-98 (9th Cir. 1994) *cert.den.* 513 U.S. 1197, 115 S.Ct. 1268 (1995); *see also*, United States v. Petti, 973 F.2d 1441, 1447 (9th Cir.) *cert.den.* 507 U.S. 1035, 113 S.Ct. 1859 (1993). The fact that a defendant plays an essential role in a scheme does not preclude a minor role reduction. *See*, United States v. Isaza-Zapata, 148 F.3d 236, 239-40 (3d.Cir.1998)(drug courier while essential to scheme still entitled to reduction); United States v. Campbell, 139 F.3d 820, 822 (11th Cir. 1998)(same).

In support of finding that Marshall played a minor role (as well as in support of a mitigating factor pursuant to 18 U.S.C. §3553 (a)), the court should consider that Ms.

Marshall's conduct was "clearly less culpable" than that of her co-defendant's as acknowledged in the PSR at ¶ 40. Her conduct is more akin to that of an aider and abettor, and as such should be seen as less culpable. *U.S. v. Posters 'N'Things*, 969 F.2d 652 (8th cir. 1992). And as noted previously, her membership in the conspiracy lasted only short time, another factor the court should account for. *U.S. v. Adelson*, 441 F. Supp.2d 506 (SDNY 2006).

For all of the above reasons, the court should find Ms. Marshall played a "minor role" and reduce her Adjusted Offense level by 2 points, to a level 18.

**Ms. Marshall's Criminal History Category is Overrepresented**

A downward departure from Criminal History Category III to category II pursuant to U.S.S.G. §4A1.3(b) is warranted. Ms. Marshall's criminal history over-represents the seriousness of her past criminal conduct and overstates her propensity to commit crimes. See, *U.S. v. Reyes*, 8 F.3d 1379 (9th Cir. 1993)(departure from 210 months to 33 months; defendant had relatively minor offenses). The court can consider Ms. Marshall's youth and immaturity in considering whether her history over-represents the seriousness of her criminal conduct. *U.S. v. Shoupe*, 988 F.2d 440, 447 (3d Cir. 1993). See also, *U.S. v. Bowser*, 941 F.2d 1019, 1024 (10th Cir. 1991)(age and close proximity in time between priors is a proper basis for departure).

Here both reasons appertain, that is her offenses are relatively minor and she committed these offenses when she was young and immature. Of the convictions that resulted in seven criminal history points, two were for prostitution and one was related to prostitution (violating conditions of release), one was for not having proof of insurance. All of her convictions were misdemeanors. Ms. Marshall has never served to more than 10 days of jail time. She served five days of jail time in her theft case, none on the false information case,

ten days on each of her prostitution cases, none on the violation of conditions of release case, none on the failure to have proof of insurance case, and five days on her DUI.

Even a sentence of 22 months as sought by Ms. Marshall represents a sentence more than 60 times longer than any sentence she has previously served. That Ms. Marshall has never previously served a substantial prison sentence does provide a valid basis for a downward departure. *U.S. v. Collington*, 461 F.3d 805 (6th Cir. 2006)(guidelines 188-235; downward departure by district court to 120 months because defendant never been in custody for any substantial period of time, only for seven months previously; sentence affirmed).

Moreover, but for the length of probation imposed in five instances, five of these convictions would not even count towards criminal history. See, U.S.S.G. §4A1.2(c)(where probation is no more than one year then both prostitution cases, the false information case, the violating conditions of release case [similar to contempt of court], and the driving without proof of insurance case [similar to driving without a license] would not count).

For all of these reasons the court should depart to downward to Criminal History Category II.

**A departure based on Coercion and Duress 5K2.12 is appropriate, and coercion should be considered as a statutory mitigating factor as well.**

For purposes of finding and properly applying a departure based on coercion and duress, the Ninth Circuit has held that the injury threatened need not be imminent. *U.S. v. Ramos-Oseguera*, 120 F.3d 1028 (9th Cir. 1997), overruled on other grounds, *U.S. v. Nordby*, 225 F.3d 1053 (9th Cir. 2000)(*en banc*); see also, *U. S. v. Cheape*, 889 F.2d 477 (3d Cir. 1989)(no proof of immediacy required, or inability to escape, and threatened injury not limited to bodily injury). Indeed, the departure is warranted when the defendant has been battered although duress did not constitute a complete defense. *U.S. v. Johnson,* 956 F.2d

894, 901 (9th Cir. 1992); see also, U.S. v. Apple, 915 F.2d 899, 903 n.12 (4th Cir. 1990)(departure warranted where defendant battered and suffered from depression); *U.S. v. Hall*, 71 F.3d 569 (6th Cir. 1995)(remanded for court to consider coercion based upon control exercised by husband). It would seem beyond question, and the government will not dispute, that given Ms. Marshall's history of rapes and beatings that she suffers from PTSD, as well as depression (see ¶99 of the PSR). *U.S. v. Menyweather*, 447 F.3d 625, 635 (9th Cir. 2006)(no abuse of discretion departing downward 8 levels to probation based in part on PTSD of defendant).

The government will not dispute and it would seem beyond question that Mujahid, exercised coercion and control over his prostitutes including Ms. Marshall. There can be little dispute that she was subservient to him. As the court observed in *U.S. v. Gaviria*, 804 F. Supp. 476 (E.D.N.Y. 1992), even where a defendant cannot show the sort of coercion or duress of which the Guidelines speak, a defendant might establish dependence relevant to blameworthiness and her sentence. "A woman living in a relationship of subservience to a man deserves less punishment that the usual defendant when that man orders her to commit a crime. The male's control can result from a combination of physical and psychological abuse, … economic dependence and other factors." *Id.*

Here, Mujahid used physical abuse, rape, verbal abuse and threats and drugs to coerce and control Marshall. This downward departure is appropriate and/ or these factors should be relied upon by the court to mitigate the sentence in this case pursuant to 18 U.S.C. §3553(a).

**Lack of Guidance as a youth as a basis for departure or consideration as a statutory factor pursuant to §3553(a).**

This court should note that lack of guidance as a youth can be considered by the court as a ground for departure. *U. S. v. Floyd*, 945 F.2d 1096 (9th Cir. 1991). The Ninth Circuit has also observed: "Where a defendant's crime is attributable to a disadvantaged background

or emotional or mental problems, the defendant is less culpable than one without the excuse." *Landrigan v. Schriro*, 441 F.3d 638, 648 (9th Cir. 2006). In addition, as this court knows, the court can specifically consider the defendant's addiction to drugs as a mitigating factor under 18 U.S. C. §3553(a). *U.S. v. Garcia*, 497 F.3d 964 (9th Cir. 2007).

Here, Ms. Marshall was "turned out" as a prostitute at age 15, given alcohol and drugs including crack at that age, effectively deprived of her childhood and education, and subjected to beatings and rape. She lacked appropriate guidance as a youth, suffered from a disadvantaged background and was addicted to drugs, specifically crack cocaine, as part of her subjugation. A downward departure or a mitigated sentence is appropriate given these circumstances.

## CONCLUSION

Overall, Ms. Marshall's personal circumstances and background are as tragic as any of the victims in this case. She was taken advantage of at 15, hooked on crack, by Aleaca Tate. She lost her innocence and childhood, and never had a chance to grow up. She was introduced by Tate to Mujahid at age 18. For the last seven years of her young short life all she has known is prostitution, drugs, beatings, and rape. Her conduct and circumstances are not comparable to Mujahid or Greene, but rather more akin to the victims in this case. Her sentence should not be more like Mujahid's or Greene's but rather more like that of the other victims or unindicted co-conspirators in this case. Based on all of the articulated factors that support in the alternative, various suggested departures, or statutory sentencing factors, a sentence of 22 months is both fair and reasonable and represents no more time than necessary to meet all of the goals of sentencing as set forth in 18 U.S.C. §3553.

/ / /

/ / /

DATED at Anchorage, Alaska, this 17th day of October 2011.

THE LAW OFFICES OF ROBERT HERZ, PC

s/ Robert M. Herz
425 G. Street, Suite 600
Anchorage, Alaska 99501
Phone 907-277-7171
Fax 907-277-0281
rmherz@gci.net
AK Bar No. 8706023

---

**CERTIFICATE OF SERVICE**
I hereby certify that on October 17 2011, a copy of the foregoing Defendant's Sentencing Memorandum was served electronically on Assistant United States Attorney s/ Robert Herz